**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: <br><br> DIRECTSTREAM, LLC, <br><br> Debtor. | Chapter 7 <br><br> Case No. 20-10534 (MFW) |
| In re: <br><br> DIRECTSTREAM FEDERAL, LLC, <br><br> Debtor. | Chapter 7 <br><br> Case No. 20-10535 (MFW) <br><br> **Hearing Date: Sept. 16, 2020 at 2:00 p.m. (ET)** |

**JOINT REPLY IN SUPPORT OF THE MOTIONS FOR AN ORDER (I) STAYING PATENT INFRINGEMENT ACTION PURSUANT TO SECTION 362(a) OR SECTION 105(a) OR (II) MODIFYING THE AUTOMATIC STAY AND GRANTING RELATED <u>RELIEF FILED BY INTEL CORPORATION AND XILINX, INC.</u>**

# TABLE OF CONTENTS

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 3 |
| ARGUMENT | 4 |
| I. The Settlement Does Not Moot the Stay Motion | 4 |
| II. The Automatic Stay Applies to the Infringement Action | 5 |
| III. The Court Should Extend the Stay Pursuant to its Section 105 Powers | 7 |
|     A. The Stay is Available in Chapter 7 Cases | 7 |
|     B. Intel and Xilinx Meet the Preliminary Injunction Standard | 8 |
|         1. Likelihood of Success on the Merits | 8 |
|         2. Irreparable Harm | 9 |
|         3. Balancing of Harms | 9 |
|         4. Public Interest | 10 |
|     C. Unusual Circumstances are Present to Warrant Extending the Stay | 10 |

**TABLE OF AUTHORITIES**

**Page(s)**

Cases

*In re Allen*,
  768 F.3d 274 (3d Cir. 2014).................................................................................................5-6

*Apple Inc. v. Fintiv, Inc.*,
  IPR2020-00019, Paper 15 (PTAB May 13, 2020) ..................................................................3

*In re Archambault*,
  174 B.R. 923 (Bankr. W.D. Mich. 1994)..............................................................................8, 9

*BFP v. Resolution Tr. Corp.*,
  511 U.S. 541 (1994)..............................................................................................................6-7

*First Alabama Bank of Montgomery, N.A. v. Parsons Steel, Inc.*,
  7474 F.2d 1367 (11th Cir. 1984) ............................................................................................11

*In re Hackler & Stelzle-Hackler*,
  938 F.3d 473 (3rd Cir. 2019) ....................................................................................................7

*In re MortgageAmerica Corp.*,
  714 F.2d 1266 (5th Cir. 1983) ...............................................................................................5-6

*In re W.R. Grace & Co.*,
  386 B.R. 17 (Bankr. D. Del. 2008) .........................................................................................10

*In re Wilton Armetale, Inc.*,
  968 F.3d 273 (3rd Cir.  2020) ...................................................................................................7

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*
  562 F.3d 553, 557 (3d Cir. 2009).............................................................................................9

*Loewen Grp. Int'l, Inc. v. Gilligan*,
  No. ADV. 00-1205, 2001 WL 1819995 (Bankr. D. Del. June 25, 2001) ...........................8, 11

*McCartney v. Integra Nat'l. Bank N.*,
  106 F.3d 506 (3d Cir. 1997).....................................................................................................7

*Parsons Steel, Inc. v. First Alabama*,
  474 U.S. 518 (1986)...............................................................................................................11

Rules and Regulations

Bankruptcy Code
  11 U.S.C. § 105(a) ........................................................................................................ *passim*
  11 U.S.C. § 362(a) ....................................................................................................................1

Federal Rules of Bankruptcy Procedure
    Rule 9019 ................................................................................................................2

Intel Corporation ("**Intel**") and Xilinx, Inc. ("**Xilinx**") respectfully submit this joint reply in further support of their respective *Motions for an Order (I) Staying Patent Infringement Action Pursuant to Section 362(a) or Section 105(a) or (II) Modifying the Automatic Stay and Granting Related Relief* (D.I. 46, D.I. 48) (the "**Stay Motions**"), and state as follows:

## PRELIMINARY STATEMENT

1. Intel and Xilinx filed the Stay Motions because, based on the limited information then available about FG SRC LLC's ("**FG SRC**") prepetition foreclosure (the "**Foreclosure**")[1] of the Debtors' assets (including an intellectual property portfolio) and its conduct as the Debtors' controlling equity holder, there appeared to be multiple potential claims against FG SRC that, if successfully pursued, would make the chapter 7 trustee (the "**Trustee**") the real party in interest in separate litigations commenced by FG SRC against Intel and Xilinx. As set forth in the Stay Motions, the litigations and foreclosed assets, therefore, either are property of these estates subject to section 362(a)'s automatic stay or they warrant some protection from this Court under section 105(a), until the Trustee irrevocably resolves claims against FG SRC or abandons those claims. Further, relief is appropriate considering the risks to Intel and Xilinx that decisions or rulings in, or even any settlement of, their respective litigations and rights could be later challenged by the Trustee.

2. FG SRC and the Trustee have settled the Trustee's claims against FG SRC (the "**Settlement**"), subject to Court approval, in a way they contend moots the Stay Motions entirely. Intel and Xilinx disagree. The Settlement does not eliminate irrevocably or fully the risk that the Trustee later may be substituted for FG SRC as the real party in interest with respect to the

---

[1] Capitalized terms not otherwise defined herein shall have the definition set forth in the Stay Motion or the Settlement Motion, as appropriate.

1

foreclosed assets. Because the Trustee and FG SRC effectively have acknowledged the legitimacy of this risk—the Trustee by proposing a release of claims (including fraudulent transfer claims) against FG SRC and FG SRC by paying cash plus a percentage of recoveries on all foreclosed assets—the order or orders relating to the Settlement and resolving the Stay Motions should provide Intel and Xilinx with full protection against the risks they have raised. Indeed, the Trustee's objection to the Stay Motions (D.I. 65) makes clear the legitimacy of these concerns given his position that if the Settlement is not approved, he agrees to be bound by the results of litigation over patents foreclosed on by FG SRC. There is no reason that the protections afforded to Intel and Xilinx in response to the Stay Motions should be less if the Settlement is approved.

3.  Attached as **Exhibit 1**[2] is a proposed order that would resolve the Stay Motions and the Settlement Motion (defined herein) by: (a) eliminating the risks to Intel and Xilinx that continue notwithstanding the Settlement, and (b) approving the Settlement while not impacting its economics or the Trustee's release of estate causes of action against FG SRC. Intel and Xilinx provided a copy of this proposed order to the Trustee and FG SRC's counsel on September 12, 2002. The Trustee and FG SRC have responded raising concerns about specific provisions of the proposed order, which Intel and Xilinx are considering.

4.  Because the proposed order, however, does no more than make absolute what one would reasonably infer is the intent behind the contention that the Settlement moots the Stay Motions, Intel and Xilinx are hopeful the Trustee and FG SRC will ultimately agree to it. But even if not, the proposed order is the appropriate resolution for both the Settlement and the Stay Motions. It respects the Trustee's ability to settle claims under Bankruptcy Rule 9019 and protects

---

[2] **Exhibit 2** is a comparison of Exhibit 1 against the proposed order the Trustee filed with the Settlement Motion.

2

against the legitimate risk that the claims asserted against Intel and Xilinx are, or might again become, estate property.

5.      To the extent the Trustee and FG SRC raise other objections to the Stay Motions, they lack merit.  The Trustee is concerned that the relief sought is too broad and detrimental to the estates, but Intel and Xilinx have not filed proofs of claim in these cases.  Trustee Obj. ¶ 2-3.  The proof of claim deadline was July 6, 2020.  They cannot now assert claims against these estates.  Similarly, FG SRC's argument that Intel filed the Stay Motion as a delay tactic to give Intel time to "attack" the '867 patent at the Patent Trial and Appeal Board ("**PTAB**") – where FG SRC asserts the patent challenger has a better chance at invalidating a patent – is wrong.  FG SRC Opp'n ¶ 6.  There is a statutory deadline to file at the PTAB and Intel would be at risk of discretionary denial if it did not promptly file.  *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 15 at 12-13 (PTAB May 13, 2020) (precedential decision denying IPR institution in part because the PTAB's final written decision was scheduled two months after the district court trial).  While Intel's Stay Motion remains undecided, Intel must fully defend against the Infringement Action and to do so it had to promptly file at the PTAB.

## BACKGROUND

6.      On July 28, 2020, Intel filed its Stay Motion.  Xilinx filed its Stay Motion on August 6, 2020.  Both motions originally were scheduled for hearing on September 2, 2020, but the hearing was continued at the request of the Trustee and FG SRC to allow them to finalize and seek approval of the Settlement.

7.      On September 2, 2020, the Trustee filed his motion to approve the Settlement (D.I. 52) (the "**Settlement Motion**").  The Settlement will release FG SRC from potential claims of the Trustee, the Debtors and their estates arising out of the Foreclosure (including the Transfer) or out

of other acts or omissions the Trustee was investigating or could investigate. The Settlement also provides that FG SRC shall use reasonable efforts to prosecute claims involving the foreclosed intellectual property, including the Infringement Actions.

8. On September 10, 2020, FG SRC opposed the Stay Motions arguing, among other things, that the Settlement moots the Stay Motions (D.I. 61).

9. The Trustee also objected to the Stay Motions (D.I. 65), incorporating FG SRC's arguments and stating that "even if the Court is not inclined to approve the settlement (which, again, would moot the relief sought), the Trustee respectfully submits that the Stay Motions should be denied for another reason: the Trustee agrees that the movants and FG SRC may proceed with the underlying patent infringement litigation, and likewise agrees to be bound by the results of the patent infringement action(s) or any other action(s) relating to the foreclosed upon patents, including any ruling, decision, order, judgment or settlement, and by any assertion by FG SRC in the patent infringement actions or in connection with applicable patents." Trustee's Obj. ¶ 5.

10. On September 10, 2020, Intel and Xilinx filed statements in response to the Settlement Motion (the "**Statements**"). They indicated that while they were not objecting to the Settlement in principle, the Settlement does not moot the Stay Motions. *See* D.I. 66, D.I. 68.

**ARGUMENT**

I.   **The Settlement Does Not Moot the Stay Motion.**

11. Contrary to FG SRC's and the Trustee's assertions, the Settlement does not irrevocably eliminate the multiple risks that would be eliminated by an order granting the Stay Motions. For example, FG SRC and the Trustee could later amend the Settlement or resolve a dispute arising from the Settlement in a way that avoids the Foreclosure. Similarly, the Settlement does not limit the Trustee's remedies should FG SRC breach the Settlement, which could lead to the same result. Furthermore, the Settlement obliges FG SRC to use reasonable efforts to prosecute

4

the Litigations and not to settle or abandon litigation for improper or bad faith reasons, but it does not limit the Trustee's ability to obtain control of the Litigations if these obligations are breached. Additionally, to the extent that the Settlement does limit or moot the concerns raised in the Stay Motions, Intel and Xilinx may be unable to enforce those limitations against the Trustee because (unlike with respect to an order on the Stay Motions) neither is a party to nor a named beneficiary of the Settlement.

12. As explained in the Statements, the Settlement does not make clear that:

   a. the Trustee and the Debtor's estate have no claims against Intel or Xilinx once the Settlement is approved;

   b. the Trustee and Debtor's estate are bound by the results of the Infringement Actions or any other action relating to the subject patents;

   c. no decisions related to the Infringement Actions or subject patents can be challenged or later avoided by the Trustee or the Debtor's estate;

   d. in the event of a breach or if the Settlement is later avoided, rescinded or otherwise found to be of no force or effect as between the Trustee and FG SRC, or if the Trustee or the Debtor's estate later avoids the Foreclosure or are otherwise deemed to be the real party or economic party in interest with respect to the subject patents or other foreclosed property, the foregoing remains true; and

   e. any action or position taken in the Infringement Actions or otherwise with respect to the subject patents by, as applicable, Intel or Xilinx, is not a violation of the automatic stay.

13. These risks would be addressed if the Stay Motion is granted, but are not alleviated only by the Settlement.

**II.  The Automatic Stay Applies to the Infringement Action.**

14. FG SRC's efforts to distinguish and discredit the Fifth Circuit's holding in *MortgageAmerica*, that recoverable assets are estate property, are unavailing. FG SRC Opp'n ¶¶ 22, 24-26. FG SRC completely ignores the circuit split recognized—and yet to be resolved—by the Third Circuit more than 30 years after *MortgageAmerica*. *See In re Allen*, 768 F.3d 274, 281

5

(3d Cir. 2014) (identifying "a split between the Fifth Circuit and the Second and Tenth Circuits in addressing whether 'recovery' of funds is required before they can be considered property of a bankruptcy estate").

15.     Furthermore, the circumstances here highlight that *MortgageAmerica* is the better reasoned of the Circuit Court cases and is not limited to a debtor or trustee seeking relief. *MortgageAmerica* holds that fraudulently transferred property is property of a debtor's estate, even if it remains in the hands of third parties, without reference to a specific procedural posture. *See Allen*, 768 F.3d at 281-82 (citing *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275-77 (5th Cir. 1983)).

16.     Although it was plainly obvious before, the Settlement Motion makes even more clear the available fraudulent transfer claim against FG SRC based on its strict, unpublicized foreclosure of the personal property assets of a company it controlled without exposing those assets to the market and valuing them at their "Tax Basis."[3]  Indeed, the Settlement itself confirms that the risk that the foreclosed assets and the litigation over them are estate property is more than theoretical.  Despite FG SRC's contention that the Foreclosure is immune from attack because of *BFP v. Resolution Tr. Corp.,* 511 U.S. 541 (1994), Settlement Motion ¶ 26, the Third Circuit made clear a year ago that *BFP* does not apply to foreclosures of personal property.  *BFP* is limited to real estate mortgage foreclosures.  Without equivocation, the Third Circuit held: "The [Supreme] Court even emphasized, in a footnote, that its [*BFP*] 'opinion . . . cover[ed] only mortgage foreclosures of real estate,' because '[t]he considerations bearing upon other foreclosures and

---

[3] Presumably, "Tax Basis" means something like purchase price/development costs less depreciation and other related tax deductions.  Accordingly, "Tax Basis" would seem to reflect the fair value of the foreclosed assets, if at all, only coincidentally in many cases.

6

forced sales (*to satisfy tax liens, for example*) may be different.'" *In re Hackler & Stelzle-Hackler*, 938 F.3d 473,479 (3rd Cir. 2019) (citing *BFP*, 511 U.S. at 479 n. 3).

17. Furthermore, FG SRC's apparent contention that a lack of reported cases where a party other than the trustee or debtor in possession has sought relief analogous to the relief sought in the Stay Motions means that a non-debtor is barred from seeking that relief is not persuasive. FG SRC Opp'n ¶ 4. The Third Circuit has held that while bankruptcy may give a debtor in possession or trustee exclusive bankruptcy standing with respect to estate claims, it does not deprive non-debtor parties of their constitutional standing to those same claims. *See In re Wilton Armetale, Inc.,* 968 F.3d 273, 280-81 (3rd Cir. 2020). Intel and Xilinx are constitutionally entitled to petition this Court for a ruling because they could be at risk of claims for violating the automatic stay. Indeed, this Court already has entertained the converse situation where Swoop Search, LLC successfully moved the Court for a ruling that its litigation against a non-debtor third party was not subject to the stay and the non-debtor third party (the owner of FG SRC) contended it was. *See* D.I. 15, 30.

**III.    The Court Should Extend the Stay Pursuant to its Section 105 Powers.**

    A.    <u>The Stay is Available in Chapter 7 Cases</u>

18. FG SRC claims that a section 105 injunction is not available under either the "unusual circumstances" test or traditional preliminary injunction standards because this is a chapter 7 case. FG SRC Opp'n ¶ 39. Both contentions are wrong.

19. First, the Third Circuit has used section 105(a) to impose a third-party stay in a chapter 7 case. *See McCartney v. Integra Nat'l. Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997) (finding unusual circumstances in a chapter 7 case where debtor was guarantor of a non-debtor with no assets, meaning that any judgment against the non-debtor would necessarily impact the estate).

7

20.     Second, courts have recognized that circumstances can require imposing a section 105(a) injunction in chapter 7 cases. Citing to Justice Cardozo regarding judges' responsibility to innovate, the court in *In re Archambault*, 174 B.R. 923, 930 (Bankr. W.D. Mich. 1994), found that the absence of cases extending the stay to non-debtors in chapter 7 cases did not end the inquiry or bar it from imposing a stay. *Id.* (granting preliminary injunction in chapter 7 case where "the failure to grant such relief would effectively deny the Debtor the 'fresh start' afforded by Chapter 7 by allowing the movant an end-run around the automatic stay"); *see also Loewen Grp. Int'l, Inc. v. Gilligan*, No. ADV. 00-1205, 2001 WL 1819995, at *4 (Bankr. D. Del. June 25, 2001) ("Expanding the scope of the automatic stay is warranted in 'unusual circumstances' where collateral estoppel [not just a successful reorganization or identity of interest between the debtor and non-debtor] may prevent a corporate debtor from re-litigating issues...").[4]

B.      Intel and Xilinx Meet the Preliminary Injunction Standard

21.     FG SRC argues that because the preliminary injunction standard is inextricably linked to reorganization, it cannot be used to analyze injunctive relief in chapter 7 cases. FG SRC Opp'n ¶¶ 42-43, 45. 54-55. As demonstrated above, this argument simply is wrong. Courts in chapter 7 cases have not only analyzed stay requests under this standard; they have granted them.

1.      Likelihood of Success on the Merits

22.     FG SRC claims that the likelihood of success factor "does not exist" in this non-reorganization case and dismisses it. FG SRC Opp'n ¶ 42. But courts have adjusted this factor in chapter 7 cases, just as Intel and Xilinx did in their Stay Motions by explaining that it was likely to the point of certainty that the Trustee would evaluate and then settle, assert or abandon claims

---

[4] Intel and Xilinx note, however, that as pointed out in the Stay Motions and discussed below, FG SRC has admitted there is no distinction between it and the Debtors in relation to Debtors' former intellectual property.

against FG SRC. *See Archambault*, 174 B.R. at 394 (adapting the likelihood of success on the merits factor to chapter 7 cases).

2. Irreparable Harm

23. Both the Trustee and FG SRC sidestep the irreparable harm to Intel and Xilinx by relying on the Settlement. FG SRC Opp'n ¶ 46. But as discussed above, the Settlement does not eliminate risk. Even with the Settlement, Intel and Xilinx would be irreparably harmed if the Trustee later avoids the Transfer or is not bound by what happens in the litigation. Although the Trustee agrees to be bound if the Settlement is not approved, he fails to do so if the Settlement is approved. The Trustee's irrevocable agreement in all circumstances is needed to eliminate the risk of irreparable harm.

24. Further, FG SRC's contention that an injunction can issue only if there is irreparable harm to the estates is wrong. FG SRC Opp'n ¶45, ¶46. As the parties requesting the injunction, the issue is irreparable harm to Intel and Xilinx. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009) ("We have repeatedly insisted that 'the preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm.'"). But even if irreparable harm to the estates were a necessary showing, it has been demonstrated here. If the Litigations are not stayed, rulings or positions taken by FG SRC in the Litigations could negatively impact the value of the foreclosed assets. Intel Stay Motion ¶ 34.

3. Balancing of Harms

25. FG SRC states that an indefinite delay in litigation will inflict substantial harm on FG SRC due to witness memory loss and loss of evidence. FG SRC Opp'n ¶ 51. It also claims there will be little incentive for litigants to come to the negotiating table if the Infringement Actions are stayed indefinitely. As to the former, the stay was only requested to be in place until the

9

Trustee's claims against FG SRC were finally resolved or abandoned. That would always have been a stay of limited duration. As for incentives, neither Intel nor Xilinx reasonably could be expected to come to the negotiating table if there is a risk that any negotiated resolution could later be challenged or subject to claims by the Trustee. That is why Intel and Xilinx always provided in the Stay Motions that their requests for relief could be addressed by the Trustee agreeing, among other things, to be bound by any negotiated or legal resolution of the claims asserted by FG SRC.

### 4.    Public Interest

26.    FG SRC argues that the "judicial efficiency" to be realized by eliminating additional lawsuits to litigate the same infringement claims is "illusory" because the Trustee has not indicated he will not abide by the outcome of the Infringement Action. FG SRC Opp'n ¶ 56. The Trustee, however, has only indicated that he agrees to be bound by the results of the Infringement Actions if the Settlement is *not* approved, Trustee's Obj. ¶ 5, and the Settlement, if approved, does not eliminate the potential the Trustee will pursue the same claims in the future, particularly if circumstances arise and he later avoids the Transfer.

### C.    Unusual Circumstances are Present to Warrant Extending the Stay

27.    Tellingly, FG SRC does not deny its identity of interest with the Debtor. Instead, it claims its identity with the Debtor is irrelevant because, under the "unusual circumstances" test, the question is limited to whether there is an identity of interest between the "defendant" (Intel or Xilinx in the Infringement Actions) and the Debtor. FG SRC Opp'n ¶ 63. This narrow view of the case law, however, misses the point. In evaluating whether there is an identity of interest between a debtor and a non-debtor, courts examine whether the debtor is the real party in interest such that the non-bankruptcy claims or litigation could negatively impact an estate. *In re W.R. Grace & Co.*, 386 B.R. 17, 30 (Bankr. D. Del. 2008). Even if every reported case were to involve a fact pattern where the identity of interest being evaluated was between a debtor and a non-debtor

defendant, that does not change the fact that if Intel or Xilinx successfully defend against FG SRC's patent infringement claims in federal district court or successfully obtain a decision from the PTAB that the subject patents are invalid, the estates could be negatively impacted due to the identity of interest between the Debtors and FG SRC. At best, the economic interests of FG SRC and the Debtors' estates are indistinguishable. At worst, the Debtors are the only true parties in interest. In either event, the identity of interest between FG SRC and the Debtors is an unusual circumstance supporting an injunction.

28. Intel and Xilinx also note that, contrary to FG SRC's narrow view of "unusual circumstances," collateral estoppel is another "unusual circumstance" that justifies a stay or injunction. *See Loewen Grp. Int'l, Inc.*, No. ADV. 00-1205, 2001 WL 1819995, at *4 ("Expanding the scope of the automatic stay is warranted in 'unusual circumstances' where collateral estoppel may prevent a corporate debtor from re-litigating issues..."); *see also First Alabama Bank of Montgomery, N.A. v. Parsons Steel, Inc.,* 747 F.2d 1367, 1378 (11th Cir. 1984), *rev'd Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518 (1986) (reversing in part on other grounds) (finding privity between trustee in bankruptcy of wholly owned subsidiary with owners of parent corporation for purposes of res judicata).

29. The circumstances in this matter before the Court are unusual. There is ample support for this Court, therefore, to fashion appropriate relief under section 105(a) as requested by Intel and Xilinx.

WHEREFORE, Intel and Xilinx respectfully request that the Court (i) grant the Stay Motions, (ii) enter an order approving the Settlement Motion and ruling on the Stay Motions (if the Court does not fully grant the Stay Motions) in the form attached to this Reply as Exhibit 1, and (iii) grant Intel and Xilinx such other and further relief as the Court deems just and proper.

Dated: September 14, 2020

Respectfully submitted,

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Derek C. Abbott*
Derek C. Abbott (No. 3376)
Taylor M. Haga (No. 6549)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email:   dabbott@mnat.com
             thaga@mnat.com

and

PILLSBURY WINTHROP SHAW PITTMAN LLP
Andrew M. Troop (admitted *pro hac vice*)
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com

Dania Slim (admitted *pro hac vice*)
324 Royal Palm Way, Suite 220
Palm Beach, FL 33480-4309
Telephone: (202) 663-9240
Facsimile: (202) 663-8007
dania.slim@pillsburylaw.com

*Counsel for Intel Corporation*


FISH & RICHARDSON P.C.

By:  */s/ Warren K. Mabey, Jr.*
       Warren K. Mabey, Jr.  (No. 5775)
       222 Delaware Avenue, 17th Floor
       P.O. Box 1114
       Wilmington, DE  19801

        Telephone: (302) 652-5070
        Email:  mabey@fr.com

ATTORNEYS FOR
XILINX, INC.